381 So.2d 803 (1980)
STATE of Louisiana
v.
Kenneth Lee SIMMONS.
No. 64875.
Supreme Court of Louisiana.
March 3, 1980.
Rehearing Denied April 7, 1980.
*804 Numa Bertel, Jr., Robert F. Barnard, New Orleans, Orleans Indigent Defender Program, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Brian G. Meissner, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Chief Justice.[*]
On March 19, 1963 defendant Kenneth Lee Simmons and Eddie Monroe were indicted by a grand jury for the offense of first degree murder, a violation of Article 30 of the Criminal Code. On June 29, 1963, following a trial by a jury, both defendants were found guilty as charged. On April 8, 1965 they were sentenced to death by electrocution.
During 1968 defendant Simmons escaped from custody and was a fugitive until 1978. In the meantime codefendant Monroe was granted an out-of-time appeal in 1973 and his conviction and sentence were reversed. State v. Monroe, 305 So.2d 902 (La.1974). Monroe subsequently pled guilty to manslaughter. Defendant Simmons was granted this out-of-time appeal on March 29, 1979. This case arises out of the fact that thirty-year-old Marieanne Chestnut was fatally shot and robbed on the night of March 1, 1963 on the parking lot of a Schwegmann Supermarket in New Orleans. A police investigation into the murder led to the arrest of Kenneth Lee Simmons who eventually confessed to the offense and implicated Eddie Monroe.
Three assignments of error are urged on this appeal.
Assignment 1: Four motions were filed in advance of trial on behalf of defendant. Three are urged here. They were a motion for change of venue, application for a lunacy commission and a motion for severance.
In the motion for change of venue it was alleged that defendant's inculpatory statement was televised in the New Orleans area. In answer the State asserted that this meagre defense allegation was not sufficient to support a finding of undue prejudice on the part of the jury trying the case. The trial judge ruled that the State's answer *805 was good and sufficient in law, to which the defense objected.
While the record contains no transcript of a special hearing on this motion, the testimony at trial discloses that media reporters were present in an adjoining room while the police reduced defendant's confession to writing. The reporters could see what was transpiring but apparently could not overhear the defendant's confession. The record indicates, further, that two news cameramen testified. In brief the defense represents that defendant made an oral confession and subsequently a written confession. The written confession was televised at the time of signing and telecast by all stations in the greater New Orleans area.
Assuming the facts set forth in defense brief and considering the facts shown in this record the showing does not warrant a change of venue. A change of venue should be granted only when the applicant proves that prejudice exists in the public mind or that undue influence would be exerted against defendant or for any other reason a fair and impartial trial could not be had in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the Court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of prospective jurors on voir dire examination or the testimony of witnesses at the trial. La.Code Crim.Pro. art. 622. See also State v. Bell, 315 So.2d 307 (La.1975).
In this State the burden is on defendant to establish that he is unable to obtain a fair trial in the parish where the prosecution is pending. State v. Berry, 329 So.2d 728 (La.1976). To be entitled to a change of venue defendant must prove that there is such prejudice in the collective mind of the community that a fair trial is impossible. State v. Sheppard, 350 So.2d 615 (La.1977). The burden of proof requires more than a mere showing that the public was aware of the facts that surround the offense. State v. Steward, 325 So.2d 819 (La.1976).
Defendant's application for the appointment of a lunacy commission was opposed by the State. Defendant relies upon letters from the Milne Boys' Home and Charity Hospital to support the application. The Superintendent of the Boys' Home and the Director of Charity Hospital indicate that Simmons was hostile and that he had been deprived of moral and financial advantages. Evidence of tests administered to defendant at an Evaluation Center, together with a psychiatric examination, indicated that he possessed "dissocial reaction secondary to environment." These showings, the defense argues, furnished grounds indicating that defendant was mentally defective and it was error for the trial judge to refuse to appoint a commission to inquire into his capacity to assist counsel in his defense.
When this case was tried the law provided that "The court may order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed. . . ." La.Code Crim.Pro. art. 643.
Considering the time lapse between the trial of this case and the inconclusive showing made by the defense on this out-of-time appeal, it may not be said that the discretion reposed in the trial judge by Article 643 was abused. The showing relied upon by the defense does not establish reasonable ground to doubt defendant's mental capacity to proceed.
Defendant's motion for severance is based upon the fact that the codefendant made a confession against defendant's interest and a claim that antagonistic defenses were presented. At trial the State introduced two written statements made by Monroe, the codefendant. The first statement indicated Simmons did the shooting during the robbery; the second revealed that Monroe actually shot the victim and at the same time portrayed Simmons as the instigator of the robbery. On the other hand Simmons' confession portrayed Monroe as the instigator.
*806 While the confessions of these defendants do purport to shift the blame for the shooting to the other, the defenses are not by reasons thereof rendered antagonistic. Both confessions involve both defendants as principals. Only the extent of participation is contradictory. The degree of blame each seeks to cast upon the other does not suffice to warrant severance. State v. Bradford, 367 So.2d 745 (La.1979); State v. Williams, 355 So.2d 1291 (La.1978).
Assignment 3: Admitting an oral and written confession of defendant into evidence is urged as error in this assignment. Statements by this seventeen-year-old defendant are alleged to have been obtained by coercion after defendant was isolated from his parents and before he was taken to a committing magistrate. Thus, it is argued, the confessions were not free and voluntary.
Defendant testified out of the presence of the jury to the circumstances leading to and surrounding the contested statements. The offense was committed on March 1, 1963 and defendant was arrested and confessed the next day. He was not advised of the Miranda rights later required by the United States Supreme Court prior to custodial interrogation. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Although he testified that he was afraid at the time and was threatened by his interrogators, the three police officers and the civilian witness who were present denied those claims and testified that defendant's confessions were free and voluntary.
It is apparent, therefore, that the issue faced by the trial judge was one of credibility which was determined adversely to the defendant. The record supports the ruling and it will not be disturbed. State v. Simmons, 340 So.2d 1357 (La.1976); State v. Hills, 337 So.2d 1155 (La.1976).
Assignment 5: Admission of codefendant Monroe's confessions are the focus of the contentions involved in this assignment.
Monroe did not take the stand, but his two separate written confessions were introduced implicating Simmons in the robbery and murder. In reversing Monroe's conviction on appeal we hold that his confessions were not free and voluntary and were therefore improperly admitted in evidence. See State v. Monroe, 305 So.2d 902 (La.1974).
Here Simmons asserts that the confessions were improperly admitted for the additional reason that the introduction of a codefendant's confession poses a substantial threat to an accused's right to confront the witnesses against him, arguing, as the Court held in Burton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), "The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination."
If it be conceded that introduction of Monroe's confession was improper, as the defense argues, the State takes the position that the error, if any, was harmless. Monroe's second confession was substantially similar to defendant's own confession which was also admitted into evidence. Relying upon our decision in State v. McSpaddin, 341 So.2d 868 (La.1977), the State argues "[T]he admission of the confession[s] of a codefendant does not vitiate a defendant's conviction where the defendant's own confession was also introduced into evidence and it `interlocked' or was `substantially identical' with the confession of his co-defendant." See also United States ex rel. Ortiz v. Fritz, 476 F.2d 37 (2d Cir. 1973), cert. denied, 414 U.S. 1072, 94 S.Ct. 591, 38 L.Ed.2d 482 (1973).
Monroe's first confession indicated Simmons was the party who did the shooting while Monroe waited in the getaway car. His second confession recanted this version and admitted that Simmons remained in the car while he robbed and murdered the victim. Simmons' confession is in substantial agreement with this latter version of Monroe's statement with some exceptions.
Monroe's confession sets forth that Simmons provided the gun and suggested the *807 robbery. It portrays Simmons as the most active participant who encouraged Monroe to leave the car and rob the victim. Simmons' confession, in contrast, asserts that Monroe provided the gun and suggested the robbery, while Simmons' only role was to wait in the car. These discrepancies, however, were not determinative of guilt or innocence of the defendants. All of the statements showed that Simmons was a principal in the robbery-murder. His admissions furnished the evidence necessary to support his conviction. Introduction of Monroe's confession was, therefore, harmless. In light of his admission Monroe's statements did not prejudice Simmons.
Assignment 6: Article 30 of the Criminal Code prescribing the death penalty, as it existed at the time of this offense, was rendered unconstitutional by the decision of the United States Supreme Court in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). In keeping with our decisions in like situations, Simmons' death penalty must be set aside and the case must be remanded to the trial court with instructions to sentence defendant to imprisonment for life. State v. Franklin, 263 La. 344, 268 So.2d 249 (1972).
For the reasons assigned the conviction is affirmed and the case is remanded for resentencing in accordance with the reasons assigned.
STONE, Justice ad hoc, dissents with reasons.
CALOGERO, J., dissents and assigns reasons.
STONE, Justice ad hoc (dissenting).
I respectfully dissent.
Defendant's assignment of error number one regarding the telecast of the signing of his confession seems to have merit. A hearing on the change of venue request should have been held in view of this unusual circumstance.
Likewise, a lunacy commission should have been appointed under the circumstances here present.
I would reverse and remand.
CALOGERO, Justice, dissenting.
This defendant and a co-defendant, Eddie Monroe (a/k/a Eddie Bell), were tried together on June 29, 1963. They were each convicted of the first degree murder of Marieanne Chestnut, arising out of an incident that occurred on March 1, 1963, in New Orleans. This Court reviewed Monroe's conviction arising out of the same trial we review here and reversed Monroe's conviction. State v. Monroe, 305 So.2d 902 (La.1973). We found that Monroe's confession was involuntary and that the admission of Simmons' confession into evidence violated Monroe's Bruton rights because Simmons did not take the stand and subject himself to cross-examination by counsel for co-defendant Monroe. State v. Monroe, 305 So.2d at 914, 915; Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Simmons is only now having his simultaneous conviction reviewed by this Court.
The admission of co-defendant Monroe's confession as relates to Simmons' trial and conviction was similarly erroneous and prejudicial for the identical reasons we expressed in State v. Monroe, supra, upon holding the Simmons confession inadmissible in the trial of Monroe. There is the additional error here that the Bruton violation consisted of the admission of a (later determined) involuntary confession of Monroe. That Monroe confession was ruled inadmissible based upon testimony showing "continued intimidation and physical mistreatment." It was offered into evidence to complement the state's case (as it related to Simmons) and to corroborate the truthfulness of Simmons' confession (which Simmons alleges was involuntary due to threats made against him). Not only was Monroe's confession involuntary and for that reason inadmissible, but its introduction into evidence violated Simmons' right to cross-examine or confront Monroe as to the truthfulness of his statement. United States Constitution, Amendment VI, Louisiana Constitution, Article I, Section 16.
*808 There are additional reasons why I take issue with the majority opinion. It has to do with the majority's relying upon the rationale of McSpaddin, 341 So.2d 868, and Ortiz, 476 F.2d 37, cert. den., 414 U.S. 1072, 94 S.Ct. 591, 38 L.Ed.2d 482, that an "interlocking" confession of a co-defendant is admissible against the defendant when a co-defendant refuses to take the stand, notwithstanding Bruton.
Where the defendant presents a serious complaint that his confession was involuntary, it is illogical to say that the introduction of a "substantially identical" hearsay confession by his co-defendant is not prejudicial to defendant. State v. Monroe, 305 So.2d at 915. The fact that the police may be able to coerce a second defendant into making an identical involuntary confession does not give credibility to the confession of either defendant or co-defendant. The untruthfulness of both confessions is exactly what defendant complains about here. The introduction of a co-defendant's confession in these circumstances is particularly egregious because a jury inclined to consider that defendant's confession was perhaps involuntary would be inclined to dismiss their concerns when they hear a similar confession from another person.
Here, unlike McSpaddin, supra and Ortiz, supra, the confession of the co-defendant was later determined to be involuntary. State v. Monroe, supra. While the trial court could not have known that the Monroe confession would later be found to have been involuntary, nonetheless, the fact remains that the admission into evidence of the co-defendant's involuntary, hearsay (as it relates to Simmons) confession when the co-defendant did not take the witness stand substantially prejudiced defendant. This was surely not an instance where the introduction of Monroe's confession was harmless. State v. Monroe, 305 So.2d at 915; Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).
I would reverse Simmons' conviction without reaching the issue of whether Simmons' confession was voluntary. Our judgments in the Monroe and Simmons appeals are inconsistent.
NOTES
[*] Jesse N. Stone participated in this decision as Associate Justice ad hoc.