YELVERTON, Judge.
Defendant pleaded guilty to two counts of issuing worthless checks in violation of LSA-R.S. 14:71. The amounts in each of the two counts placed the violations within the penalty range of LSA-R.S. 14:71(D) providing for a maximum of two years imprisonment, or a fine of $2,000, or both. On May 12,1983, defendant was sentenced. He appealed, contending there was noncompliance with La.C.Cr.P. art. 894.1, the sentencing guidelines statute, and that the punishment was constitutionally excessive.
We remanded for resentencing, 441 So.2d 830 (La.App. 3rd Cir.1983), because the sentence was unclear and we were unable to determine whether there were two one-year sentences to run consecutively, or two two-year sentences to run consecutively, and because, further, there was no compliance in the record with the sentencing considerations of C.Cr.P. art. 894.1.
On remand, the sentencing judge made it clear that it was his intention to impose, and he then actually imposed, consecutive two-year sentences for each conviction, to-talling four years at hard labor in the custody of the Louisiana Department of Corrections. At this sentencing, conducted on January 25, 1984, the court, in compliance with C.Cr.P. art. 894.1, stated for the record the considerations taken into account and the factual basis therefor in imposing the sentences.
The case is again before us on appeal, appellant’s contentions being, again, that there was noncompliance with the sentencing guidelines, and that there was an excessive total sentence.
Finding no merit to either of these assignments, we affirm the sentences. The record shows that Miller was charged by a bill of information with 13 misdemeanor counts of issuing worthless checks over a span of time from October 17, 1980, to January 29, 1981, about three and a half months. This bill of information bore number 30,365 on the docket of the Eleventh Judicial District Court.
By a separate, earlier bill of information, number 28,579, defendant was charged with issuing three worthless checks. One was a felony check for $145 dated November 24, 1979. The other two were misdemeanor checks dated in September and October of 1980.
The defendant entered pleas to two felony charges based on these bills. One was the $145 felony count in bill of information *98 number 28,579. The other was a charge made pursuant to the authority of LSA-R.S. 14:71(F), which provides that when the offender has issued more than one worthless check in a one hundred eighty day period, the aggregate of the amount of all worthless checks issued during that one hundred eighty day period shall determine the grade of the offense. Since the aggregate of the 13 bad checks was more than $100 but less than $500, defendant was exposed to a punishment on that charge of up to two years with or without hard labor, or a $2,000 fine, or both, just as the punishment to which he was exposed under the other felony charge.
The record as made up on remand shows that a presentence investigation was made and a report rendered, and that defense counsel was provided a copy of the report before sentencing. The record reflects that the court advised counsel that if there was anything in the report which defendant desired to traverse, or any evidence he wanted to present at sentencing, an opportunity to do so would be given at the sentencing hearing. Defendant did not attempt to traverse the contents of the report, nor did he offer any evidence of mitigating circumstances at sentencing.
In its explanation of the sentence on remand, the sentencing judge first observed that none of the money had been refunded or paid to those who suffered losses by virtue of the issuance of these worthless checks. Considering that the defendant had entered his guilty plea back in 1982, with the understanding, clearly evidenced on the record, that any consideration of leniency would be conditioned upon his repaying the bad check victims, we think that it was entirely proper for the court to have taken into consideration the fact that defendant made no effort to make restitution in the intervening period.
The sentencing judge went on to explain that the defendant had a substantial prior history of involvement with the criminal law resulting in felony convictions and incarceration over a significant period of time all the way back to 1970. In fact, explained the trial court, the defendant had two prior felony convictions before the present cases, and therefore he was not eligible for probation in either of the two present convictions. The court noted that the defendant’s age of 33 suggested maturity and did not favor a light sentence. The court was also critical of defendant’s employment record. These were the reasons given by the trial court to substantiate the consecutive maximum sentences.
The presentence report fully supports the trial court’s reasons for sentence. As a juvenile, defendant spent time in an Iowa training school for rape. He has a lengthy prior adult criminal record, including two felonies, in three states. Following a suspended sentence and probation for one of these felonies, an auto theft conviction in Texas, defendant’s probation was revoked and, after he served a portion of the sentence for that offense and was released on parole, that, too, was revoked. Thus, he has demonstrated no inclination to benefit from previous repeated lenient treatment. Although he has a common-law wife and two small children, his poor work record and lack of interest in employment indicate that his incarceration would work no more a financial hardship on his family than would his presence at home.
We recognize that we are here faced with severe sentences which make our review responsibilities formidable in two respects. On the one hand, there is a special standard of review to which we are held when maximum sentences are imposed. As indicated in State v. Jones, 398 So.2d 1049 (La.1981), maximum sentences are appropriately imposed in cases involving the most serious violations of the described offense, and for the worst kind of offender. Superimposed upon that standard is the review problem raised by the imposition of consecutive, rather than concurrent sentences. Under C.Cr.P. art. 883, where a defendant is convicted of two or more offenses based on the same act or transaction, or constituting part of a common scheme or plan, the terms of imprisonment shall be served concurrently unless *99 the court expressly directs that some or all be served consecutively. In the present case, the trial court expressly directed that the sentences were to be served consecutively. Although there is no requirement in this statute that the court articulate its reasons for so directing, in State v. Gage, 399 So.2d 1174 (La.1981), there is a strong per curiam suggestion that there be some explanation from the trial court of the availability of concurrent, as opposed to consecutive sentences, under article 883.
Based upon our review of the reasons for sentencing, which we deem a sufficient compliance with article 894.1, and the contents of the presentence investigation report in the record, we find full support for upholding these sentences, not only as to their severity, but also as to the sentencing court’s decision to make them consecutive. The sentences are affirmed.
AFFIRMED.